# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| THELMA WHITE and NICOLE CARROLL, Individually and on behalf of others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 4:12-CV-469 JAR |
| v. | ) ) | |
| 14051 MANCHESTER INC. d/b/a HOTSHOTS SPORTS BAR & GRILL, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Certify Missouri and Illinois State Law Claims as a Class Action (ECF No. 138), Defendants' Motion to Decertify Collective Class (ECF No. 145), Defendant Daniel Volmert's Motion for Partial Summary Judgment (ECF No. 147), Defendant Julie Volmert's Motion for Partial Summary Judgment (ECF No. 150), Defendants' Motion to Strike and Exclude Expert Testimony (ECF No. 153), Plaintiffs' Motion for Summary Judgment on Individual Liability of Daniel and Julie Volmert and Memorandum in Support (ECF No. 156), Plaintiffs' Motion for Summary Judgment on Liability and Memorandum in Support (ECF No. 157), and Defendants' Combined Motion to Strike Affidavits and Memorandum in Support Thereof (ECF No. 169). These matters are fully briefed and ready for disposition.

## BACKGROUND

The two named plaintiffs Thelma White and Nicole Carroll (collectively, "Named Plaintiffs") were formerly employed by Hotshots Sports Bar & Grill ("Hotshots"),[1] as servers and bartenders.

On March 14, 2012, Plaintiffs filed this action against various Hotshots locations. On or around March 8, 2013, Plaintiffs filed their Fourth Amended Complaint, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.A. §207, *et seq.* in Count I, the Missouri Minimum Wage Law ("MMWL"), R.S. Mo. §290.500, *et seq.* in Count II, and the Illinois Minimum Wage Law ("ILWL"), 820 ILCS §105/1, *et seq.* in Count III.  At issue is Hotshots' purported policy requiring tipped employees to share their tips with untipped "back of the house" employees.  Plaintiffs contend that Defendants violated the FLSA, MMWL, and the IMWL by taking the "tip credit" while also misuing employee tips.  (Fourth Amended Complaint, ECF No. 100, ¶2).  Plaintiffs allege that Defendants should not have been permitted to take advantage of the "tip credit" and, consequently, Plaintiffs were paid less than minimum wage in violation of the FLSA, MMWL, and IMWL.  (Id.)

On November 30, 2012, this Court conditionally certified, under the FLSA, a class of all current and former hourly-paid employees of Hotshots who shared in any tip pool for the period of three (3) years from the date of the mailing notice.  Defendants have moved to decertify this collective action, Plaintiffs have moved to certify the state law claims for class action status, and both sides have filed motions for summary judgment, in addition to the other pending motions.

**DISCUSSION**

I.      **MOTION TO DECERTIFY**

---

[1] The Court refers to Defendants 14051 Manchester, Inc., 12154 Rock Road, Inc., 950-952 South Highway, LLC, 12644 Dorsett Road, LLC, 215 O'Fallon Place, LLC, 4021 Union, LLC, 1636 Country Club Plaza, Inc., 730 HSBG, LLC, and 1319 Central Park, LLC as "Hotshots".  Class members worked at eight Hotshots locations during the Class Period.  (ECF No. 171 at 24).

## A. Standard

Section 216(b) of the FLSA provides that an action for unpaid minimum wages may be maintained against an employer by "any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "Section 216(b)'s collective action mechanism 'sets forth two requirements for the adjudication of claims as collective actions: (1) the plaintiffs must be "similarly situated" and (2) all party plaintiffs must give their written affirmative consent to participate in the action.'" Douglas v. First Student, Inc., 888 F. Supp. 2d 929, 932-33 (E.D. Ark. 2012)(quoting Wright v. Pulaski County, No. 4:09CV00065 SWW, 2010 WL 3328015, at *9 (E.D.Ark. Aug. 24, 2010)). Unlike a Rule 23 class action, a collective action under the FLSA is pursued on an opt-in basis, requiring employees to provide their consent in writing to join the action. 29 U.S.C. § 216(b); Ford v. Townsends of Arkansas, Inc., No. 4:08cv509, 2010 U.S. Dist. Lexis 46093, at *8 (E.D. Ark. Apr. 9, 2010).

At the initial conditional-certification stage, the plaintiffs' burden is not rigorous; they must only show that there is a "colorable basis for their claim" and "that a class of similarly situated plaintiffs exists." Smith, 404 F.Supp.2d at 1149. At the decertification stage, however, the standard is stricter, and three factors are analyzed: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant that appear to be individual to each plaintiff, and (3) fairness and procedural considerations. Id. at 1149-50 (citing Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001). At the second stage, "the question is simply whether the differences among the plaintiffs outweigh the similarities of the practices to which they were allegedly subjected." White v. Baptist Mem'l

Health Care Corp., 08-2478, 2011 WL 1883959 (W.D. Tenn. May 17, 2011), aff'd, 699 F.3d 869 (6th Cir. 2012) (citing Monroe v. FTS USA, LLC, 763 F. Supp. 2d 979, 994 (W.D. Tenn. 2011)).

At the second stage "the Court must make a factual determination based on information gained from discovery on whether the conditionally certified class members are in fact similarly situated." Johnson v. TGF Precision Haircutters, Inc., CIV.A. H-03-3641, 2005 WL 1994286, at *1 (S.D. Tex. Aug. 17, 2005)(citing Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1214 (5th Cir. 1995)). "If the [class members] are similarly situated, the district court allows the representative action to proceed to trial." Mooney, 54 F.3d at 1214. "If not, the district court decertifies the class, dismisses without prejudice the opt-in plaintiffs, and allows the class representative to proceed to trial on her individual claims." Johnson, 2005 WL 1994286, at *1 (citing Mooney, 54 F.3d at 1214). "The decision to certify or decertify a collective action under section 216(b) is within the district court's discretion." Nerland v. Caribou Coffee Co., Inc., 564 F. Supp. 2d 1010, 1018 (D. Minn. 2007).

### B. Discussion

Defendants contend that this collective action should be decertified. Defendants maintain that there is no unlawful, company-wide policy with respect to tip-sharing; rather, they claim that the tip sharing policy is lawful. Defendants assert Plaintiffs have failed to show that they are similarly situated to each other. Finally, Defendants state that credibility issues of the Named Plaintiffs preclude a collective action. Because the Court find that the differences among plaintiffs outweigh the similarities of the practices to which they were allegedly subjected, the Court decertifies the FLSA action. White, 2011 WL 1883959, *4.

### 1. No Single Policy/Employees Not Similarly Situated

Plaintiffs may show that they are similarly situated by either proving that the employer "engaged in a unified policy, plan, or scheme of FLSA violations," or that "their positions are 'similar, not identical' to the positions held by the other class members." Kautsch v. Premier Commc'ns, No. 06CV04035 NKL, 2008 WL 294271, at *1 (W.D.Mo. Jan. 31, 2008) (internal citation omitted); Wacker v. Pers. Touch Home Care, Inc., 4:08CV93 CDP, 2008 WL 4838146, at *4 (E.D. Mo. Nov. 6, 2008)(plaintiffs must provide competent evidence of an unlawful company-wide policy); Smith v. Heartland Auto. Servs., Inc., 404 F.Supp.2d 1144, 1149 (D. Minn. 2005). "Plaintiffs seeking to maintain an opt-in class action bear the burden to show that they are similarly situated with respect to their job requirements and pay provisions." Kautsch v. Premier Communications, No. 06-cv-04035-NKL, 2008 WL 294271, at *1 (W.D.Mo. Jan. 31, 2008)(citing Grayson v. K-Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996)).

Plaintiffs assert that there was "*one* relevant policy and violation: unlawful mandatory tip sharing with cooks and doormen." (ECF No. 171 at 22)(emphasis in original). In their declarations in support of the Motion to Conditionally Certify the class, the Named Plaintiffs, Thelma White and Nicole Carroll, stated that they were required to share their tips with non-tipped employees during every shift. See Declaration of Thelma White, ECF No. 44-2, ¶¶14-16; Declaration of Nicole Carroll, ECF No. 44-3, ¶¶15-17. Plaintiffs further assert that a unified, mandatory tip-sharing policy exists, as evidenced in part by Hotshots' unlawful written policy.

The Hotshots Employee Handbook states:

It is suggested a voluntary 5% gratuity to the cooks and bartenders at the end of your full shift.

(ECF No. 146 at 6). Plaintiffs argue that the mere suggestion of a tip to the cooks and bartenders in the written policy might violate the FLSA. (ECF No. 171 at 19-20). To the extent that the

legality of this policy is in dispute, Plaintiffs assert that this is an issue of fact that precludes decertification.

In the Motion to Decertify, Defendants state that the policy in the employee handbook is a lawful policy in support of voluntary tip-sharing and cannot form the basis of a FLSA claim. Defendants further argue that Plaintiffs have not set forth a company-wide unlawful policy.

Defendants also argue for decertification on the grounds that Plaintiffs have, at most, only set forth dozens of different policies that vary widely regarding the method, amount and requirements for tip-sharing. (ECF No. 146 at 11). Defendants maintain that, contrary to Plaintiffs' prior representations during conditional certification, the Hotshots servers and bartenders have asserted that they are subject to different tip sharing policies. In their briefing, Defendants outline the various "policies" mentioned by the named and opt-in plaintiffs during their depositions, such as tipping a percentage of the tips received, tipping a percentage of the food bill, or a flat pay out of $5-$10. Named Plaintiff Carroll stated that she had to give at least $10.00 per night to each cook on weekdays and $20.00 per night to each cook on weekends. (ECF No. 146 at 11). Named Plaintiff White said that she had to give at least 5% of her total tips earned each night to "the cook." (Id.). Several other opt-in plaintiffs stated that they were required to give 5% of their tips to the cooks. See ECF Nos. 146-39, 146-40, 146-41. Other opt-in plaintiffs stated that they were required to give a larger percentage of their tips to the cooks. Id. (Alexander (5-10%), Campbell (5-10%), Grace (15-20%), Guastro (10-15%), Nagel (20%), Nenninger (10-15%), Price (5-10%), Rhodes (10%), Roskowske (10%), Runge (5-10%), Schuck (5-10%), Smith (10%), and Woolfrey (10-15% or more)). Some Plaintiffs stated that they did not have to share five percent. See id. (Akerboom (2-5%) and Kraml (3-8%). Opt-in plaintiff Miller stated that she had to share a percentage of all of her tips, but she did not specify the

amount.  Id.  Opt-in plaintiff Nitz said that she had to "share 5% of her tips with bartenders, cooks and doormen" but it was unclear whether that was 5% to each group or 5% total.  Id.

Other Plaintiffs testified that they were required to give cooks a percentage based upon their sales, not their tips.  Opt-in plaintiff Dannan stated that she had to give 10% of her food sales to the doorman, 10% of her liquor sales to the bar and 10% of her food sales to the cooks.  ECF No. 146-39 at 54.  Other opt-in plaintiffs also testified that they had to give a percentage of their food sales to the cooks.  See ECF No. 146-39, 146-40, 146-41 (Johnson (5%), Kocinski (5%), Narez (5-10%), and Robinson (10%).  Further, opt-in plaintiff Baum testified that she was taught to share money with the cooks based upon the "total amount of food and drink and anything else that [she] had sold[.]"  (ECF No. 146 at 15).  Baum said she gave 5-10% when she was a server but 10-15% when she was a bartender.  (Id. at 15-16).  Opt-in plaintiff Kirk stated that she was initially required to give 5% of her tips to cooks but this later changed to 5% of her food sales.  (ECF No. 146-40 at 19).  Opt-in plaintiff Mazzio attested that she was required to share "a certain percentage of her food sales tips with cooks, a certain percentage of her liquor sales with the bartenders, and a certain percentage of her tips with doormen," without identifying what those percentages were.  (ECF No. 146-40 at 55).

Defendants also note that Plaintiffs (including the Named Plaintiffs) also testified that they were not required to share their tips on all shifts.  (ECF No. 146 at 8; ECF No. 183 at 4). For example, Plaintiff White testified that she did not have to tip out if a manager "Greg" was on duty.  (ECF No. 146 at 9).

Defendants assert that Plaintiffs' claims of a policy or plan vary widely, from store to store and manager to manager, such that there was not a uniform policy or plan in place.  (ECF No. 183 at 3).  Defendants assert the policies and plans identified by Plaintiffs cannot form the

basis of a collective action because they are so disparate that individualized inquiries into each claim would be essential. (ECF No. 183 at 4). Defendants state that this case must be de-certified because Plaintiffs fail to provide evidence of a specific, uniform company-wide unlawful policy and because the various unlawful policies suggested by the Plaintiffs are too different, such that they are essentially different policies. (ECF No. 183 at 3-4). In sum, Defendants assert that Plaintiffs' description of the relevant policy is too vague and amounts to nothing more than an assertion that the law was violated. (ECF No. 183 at 5).

In addition, Defendants provide evidence of other Hotshots managers, servers, bartenders and cooks who state that they were not subject to a mandatory tip sharing policy. (ECF No. 146 at 19-20; ECF No. 146-3 – 146-31). Defendants note that Plaintiffs have not come forward with any evidence that a server was disciplined for not sharing tips. Defendants, however, have come forward with evidence that cooks or doormen have been disciplined for asking servers for tips. See, e.g., Affidavit of Ryan Campbell, ECF No. 146-3, ¶13.

At its essence, the question before the Court is, "What was the illegal tip-sharing policy that applied to all collective action members?" On one hand, Plaintiffs contend that the policy was that bartenders and servers were forced to participate in an illegal tip-sharing pool. On the other hand, Defendants put forth significant evidence that there is no overarching illegal policy. Rather, the policy, if any, is composed of several different policies.

In ruling on the Motion for Decertification, the Court recognizes the remedial purpose of the FLSA. See Gomez v. Tyson Foods, Inc., 8:08CV21, 2013 WL 7045055, at *8 (D. Neb. Feb. 11, 2013)(citing Overstreet v. North Shore Corp., 318 U.S. 125, 131–32 (1943); Brennan v. Plaza Shoe Store, Inc., 522 F.2d 843, 846 (8th Cir.1975))("The Fair Labor Standards Act is remedial in nature, its purpose is to protect employees, and it must be interpreted in a manner

consistent with that purpose."). However, the Court finds that the evidence does not support a finding of a single, overarching policy that applies to the collective action class.

This case involves a class of 57 plaintiffs (2 named and 55 opt-in). While the Court does not expect uniformity among all of the members of a class, particularly a large class, there must be some consistency regarding the policy at issue. This case does not involve a large class. Where there are only 57 plaintiffs, the Court expects more uniformity regarding the policy at issue. There is no policy that "'bind[s]' the plaintiffs' claims together in a way that promote[s] collective adjudication." Johnson, 2005 WL 1994286, at *2. The only "policy" that binds the plaintiffs is an alleged unlawful, mandatory tip-sharing policy. This vague policy is insufficient, particularly for a class of this size and, upon closer examination, fails to bind any cohesive class. See Martin v. Citizens Fin. Grp., Inc., CIV.A. 10-260, 2013 WL 1234081, at *3 (E.D. Pa. Mar. 27, 2013)("General allegations of an overarching employer policy "are insufficient, and plaintiffs are required to produce substantial evidence of a single decision, policy, or plan."). The policies articulated by the plaintiffs are too various and varied to form the basis of a collective action. See ECF Nos. 146-39, 146-40, 146-41. Rather, the purported unlawful tip sharing policy (if there is one) seems to have affected the Plaintiffs in different and individual ways. The Court, therefore, finds that there is not one "single decision, policy, or plan" but rather multiple policies that require decertification. Martin, 2013 WL 1234081, at *6; see also Johnson, 2005 WL 1994286, at *5 ("The foregoing conglomerate of diverse evidence indicates that some Plaintiffs may have prima facie claims for FLSA violations at different times, in different places, in different ways, and to differing degrees, but the evidence of varied particular violations is insufficient to show that Defendants implemented a uniform, systematically applied policy[.]").

Even within particular Hotshots locations, there does not to appear be any uniformity of the tip-sharing policies that affected the servers and bartenders.  See, e.g., ECF No. 146-43. There appears to be no  rhyme or reason to the various policy iterations such that the Court could divide the action into sub-classes for purposes of certification.  (ECF No. 146 at 17-19).  The evidence before the Court indicates that the purported tip-sharing policy "was not uniformly or systematically implemented at any given store."  Basco v. Wal-Mart Stores, Inc., CIV.A. 00-3184, 2004 WL 1497709, at *7 (E.D. La. July 2, 2004); Johnson, 2005 WL 1994286, at *2.

Finally, Plaintiffs instruct the Court that the "best authority" for analyzing the decertification issue is Rikard v. U.S. Auto Prot., LLC, 4:11CV1580 JCH, 2013 WL 5532688 (E.D. Mo. Oct. 4, 2013); (ECF No. 171 at 24).  However, the Rikard case involved a single call center. 2013 WL 5532688, at *3.  The Court determined that the evidence gave rise to the inference that "Defendants maintained a top-down, centralized policy regarding overtime."  Id. In contrast, this case involves eight different Hotshots locations.  In addition, there does not seem to be an overarching, centralized policy at play here.  Rather, several of the opt-in plaintiffs stated that the policy varied depending on independent circumstances such as who was the manager.  The Court finds that the Rikard case is distinguishable in several aspects from this case and, therefore, does not change the Court's decision that decertification is appropriate.  The Court holds the disparate factual and employment setting of the Plaintiffs, particularly the dissimilar policies that affected the Plaintiffs, requires decertification of the opt-in class.

The Court also finds that the collective action class is not similarly situated because its members were not subject to the same unified plan or policy.  See Bayles v. Am. Med. Response of Colorado, Inc., 950 F. Supp. 1053, 1060 (D. Colo. 1996) (each plaintiff's proof of violation will be individualized because it depends upon how or whether defendant's policy was

implemented by individual managers with regard to individual plaintiffs, not what the policy was). A collective action cannot stand where "the facts are too individualized to warrant this kind of procedure." Basco, 2004 WL 1497709, at *7. Here, the various iterations of the policy described force the Court to conclude that Plaintiffs are not similarly situated. See also Stone v. First Union Corp., 203 F.R.D. 532, 546 (S.D. Fla. 2001)(finding that personnel actions upon which plaintiffs based their complaint were "too diverse to support a collective action of 'similarly situated' individuals").

### a. Representative Testimony

One of the most troubling questions in this case is whether the testimony of the Named Plaintiffs can be considered representative of the experiences of the entire class and whether their experiences are shared or whether individualized inquiries require that the case cannot proceed to trial collectively. The evidence before the Court indicates that Plaintiffs, particularly the Named Plaintiffs, would not be able to testify about a single, uniform policy. There cannot be representative evidence and testimony where the plaintiff was not subject to the same policy as the collective class. In their declarations in support of the Motion to Conditionally Certify the class, the Named Plaintiffs, Thelma White and Nicole Carroll, stated that they were required to share their tips with non-tipped employees during every shift. See Declaration of Thelma White, ECF No. 44-2, ¶¶14-16; Declaration of Nicole Carroll, ECF No. 44-3, ¶¶15-17. Named Plaintiff Carroll also stated that she had to give at least $10.00 per night to each cook on weekdays and $20.00 per night to each cook on weekends. (ECF No. 146 at 11). Named Plaintiff White said that she had to give at least 5% of her total tips earned each night to "the cook." (Id.). That clearly was not the experience of most of the opt-in plaintiffs, nor was it the experience of the other affiants noted by Hotshots who claim that tip-pooling was not mandatory. Likewise, the

sworn testimony of White and Carroll regarding the Hotshots tipping policy does not represent the shared experience among Hotshots servers and bartenders.

Moreover, the Named Plaintiffs would not be able to explain to the jury why they were not subject to the same tip sharing policies. The Named Plaintiffs both stated that they could not testify as to what policy affected other employees and expressly stated that they could speak only regarding their own working conditions. See ECF No. 146 at 12 (citing Thelma White Deposition at 96:18-97:3 ("I'm not Nicole. I'm Thelma. I'm – I'm only answering for my—for me. I cannot answer for somebody else."); Carroll Deposition at 92:10-14 ("Q. Did you and Thelma White work under different tip pooling policies? A. Not that I'm aware of. I don't know what the server – I mean, I don't know.")). Based upon this testimony, the Court believes that the evidence regarding the tip-sharing policy would be so dissimilar that the jury would not be able to discern what, if any, the true policy would be. See, e.g., ECF No. 146-43.

Although Plaintiffs suggest a trial plan that includes representative testimony from Plaintiffs from each Hotshots location at issue (ECF No. 171 at 28), the evidence before the Court indicates that this would not be a viable method of proceeding.[2] See Roussell v. Brinker Int'l, Inc., CIV.A. H-05-3733, 2008 WL 2714079, *22 (S.D. Tex. July 9, 2008)("the use of representative testimony is justified only where it is reasonable to believe that the testifying witnesses' experiences are sufficiently similar to those of the rest of the non-testifying

---

[2] While Plaintiffs also have suggested that the Court could bifurcate the trial to address the issue of damages separate from liability (ECF No. 171 at 28), the Court does not believe that this rectifies the underlying issue of whether there would be representative testimony regarding a common, unlawful policy or plan. The differences between Plaintiffs do not simply relate to damages or "variations in the amount of tips" (ECF No. 171 at 15), but are material to the existence of a common policy or plan. The Court finds there are simply too many differences between the experiences of the Plaintiffs to allow collective proceedings.

plaintiffs")[3]. Plaintiffs have provided no evidence that there was a common policy or experience at each of the different Hotshots locations. Cf. ECF No. 146-13 (chart demonstrating the different tipping policies experienced by Plaintiffs). The Court decertifies this action because it would be untenable for this case to proceed on a collective basis when there is no uniform policy, nor shared experience and, consequently, representative testimony could not be presented regarding any shared experience. See Johnson, 2005 WL 1994286, at *5 ("[T]he alleged violations are not uniform; to the contrary, they are highly variable, evidently depending to a great extent upon circumstances and the attitudes and perceptions of individual managers. ... The numerous variations of complaints alleged, and concomitant individual inquiries that would be required, all weigh in favor of decertification.").

### 2. Credibility Issues

As an additional basis for decertifying the FLSA collective action, Defendants assert that Plaintiffs' credibility issues preclude class treatment. Defendants maintain that the Named Plaintiffs lied in their Declarations in support of conditional class certification when they stated that they knew that the alleged Hotshots tip pooling policy applied uniformly throughout all Hotshots locations. (ECF No. 146 at 26-31; ECF No. 183 at 2). At deposition, both Named

---

[3]In Roussell v. Brinker Intern., Inc., the district court there determined that it had to consider whether "representative" testimony from the opt-in plaintiffs would be sufficient to show that all opt-in plaintiffs were subject to the same coercive policy. 2008 WL 2714079, at *22. The Roussell court noted that the defendant presented a number of witnesses controverting the plaintiff's testimony that tip sharing was mandatory. Id. The Roussell court determined that "[t]he question of whether managers coerced servers into sharing tips with [non-tipped employees], under the particular facts of this case, does appear to turn on the actions of individual managers at hundreds of stores across the country and does appear to require individualized defenses." Id. The Roussell court concluded that "the question of manager coercion [could not be] fairly tried by representative testimony" under the plaintiffs' trial plan and ordered the plaintiff to submit a revised trial plan. Id., at *24. Ultimately, the Roussell court held that the "Plaintiffs' Revised Trial Plan does not render this case suitable for collective action under Section 216 of the FLSA" and decertified the action. Roussell v. Brinker Int'l, Inc., CIV.A. H-05-3733, 2008 WL 7835721, at *3 (S.D. Tex. Sept. 30, 2008)

Plaintiffs testified that they do not know what the tip policy was at stores where they did not work and that they do not know the tip policy that applied to co-workers at locations where they did work. (ECF No. 183 at 2). Defendants assert that this contradictory testimony of the supposed class representatives regarding material facts requires decertification.

In response, Plaintiffs contend that the credibility attacks are not supported by the record. (ECF No. 171 at 24-25). Plaintiffs state that Ms. Carroll and Ms. White did not testify that they did not have knowledge regarding whether other servers and bartenders were subject to the same unlawful tip sharing policy. (Id. at 24). Likewise Plaintiffs state that Ms. Carroll and Ms. White did not recant their allegation that Hotshots had a uniform illegal tip sharing policy. (Id. at 24-25).

Further, Plaintiffs contend that credibility issues are not defenses that can preclude a finding of similarly situated plaintiffs and require decertification. (ECF No. 171 at 25). Plaintiffs contend that credibility is not a defense requiring decertification; rather, credibility is an issue for trial. (ECF No. 171 at 26). Moreover, Plaintiffs assert that any minor factual discrepancies do not require decertification because they do not establish that Plaintiffs are not similarly situated. (ECF No. 171 at 25).

The Court believes that this factual issue favors decertification. Defendant has a right to attack the accuracy of testimony, particularly representative testimony. "The Court recognizes that '[s]uch individual questioning would likely make it difficult and confusing for the fact finder[.]'" Simmons v. Valspar Corp., CIV. 10-3026 RHK/SER, 2013 WL 2147862, at *5 (D. Minn. May 16, 2013)(citing Aquilino v. Home Depot, U.S.A., Inc., Civ. Action No. 04–04100, 2011 WL 564039, at *9 (D.N.J. Feb. 15, 2011)). Although it does not appear that the Named Plaintiffs made any intentional misrepresentations, the Court finds that, given the Named

Plaintiffs' conflicting testimony, Defendants have a right to explore their underlying credibility and/or ability to speak for the FLSA class. Given the individualized inquiry involved in this line of credibility questioning and the distraction that this questioning would pose to the underlying issues, the Court finds that this factor also favors decertification.

### 3. Fairness and Procedural Considerations

"Finally, the fairness and procedural factors direct the court to consider whether it can analyze the opt-in class with a 'broad scale approach.'" Moss v. Crawford & Co., 201 F.R.D. 398, 410 (W.D. Pa. 2000)(quoting Lusardi v. Xerox Corp., 118 F.R.D. 351, 360 (D.N.J. 1987)). "The court should consider that the primary objectives of a § 216(b) collective action are: (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." Moss, 201 F.R.D. at 410 (citing Hoffmann–La Roche, Inc. v. Sperling, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). "The court must also determine whether it can coherently manage the class in a manner that will not prejudice any party." Moss, 201 F.R.D. at 410 (citing Thiessen v. General Electric Capital Corp., 996 F.Supp. 1080, 1084 (D. Kan. 1998)).

Plaintiffs broadly state that fairness and procedural considerations weigh in favor of collective treatment. (ECF No. 171 at 26). Plaintiffs assert that the common questions that face all of the members of the collective class weigh in favor of collective treatment and outweigh decertification and the prospect of 55 separate lawsuits. (ECF No. 171 at 26-27). Plaintiffs further claim that decertification would be impractical given the amount in controversy for each opt-in Plaintiff and the results available to them for 55 individual lawsuits. (Id.). Plaintiffs state that retaining this as a collective action has the advantage of lowering individual costs and

efficient use of the court system through one resolution of common legal issues and facts arising from the same allegedly unlawful activity. (ECF No. 171 at 28). Plaintiffs suggest that the Court hear representative testimony from Plaintiffs from each Hotshots location and then bifurcate the damages issues under Fed.R.Civ.P. 42(b). (Id.).

In reply, Defendants assert that a collective action and representative testimony is not possible in this case. Defendants maintain that the Named Plaintiffs, White and Carroll, have testified that they lack any knowledge regarding the policy to which other employees were subjected, including employees at stores where they worked. (ECF No. 183 at 17). Defendants assert that Plaintiffs have not demonstrated what representative testimony they will provide "to cover all time during the Class Period, at all locations and under all managers." (Id. at 17-18). In addition to the Named Plaintiffs, other deposed Plaintiffs testified that they had limited knowledge regarding the tipping policies at other locations. (Id.).

In addition to the lack of knowledge regarding the policies affecting other employees, Defendants point out that Plaintiffs also cannot testify regarding a single unlawful tipping policy. Defendants contend that the interrogatory answers of other opt-in plaintiffs reflect that Hotshots employees were subject to different policies and procedures. (ECF No. 183 at 18). Defendants argue that at trial "[e]ither Plaintiffs who admit they do not know about other employees' conditions will be presented to the jury as having stated the policy of all employees, or dozens of employees will be presented to the jury as having stated the policy of all employees, or dozens of employees will testify to dozens of policies, and a jury will be left to determine whose rights were violated and whose were not." (ECF No. 183 at 19). In sum, Defendants contend that Plaintiffs will not be able to prove their case through representative testimony because there can

be no representative testimony for this disparate class that is not similarly situated and not subject to a uniform policy. (ECF No. 183 at 19).

Although the Court recognizes that the FLSA is a remedial statute and the tremendous advantage of collective actions to lower individual costs through the pooling of resources, the Court believes fairness and procedural considerations ultimately favor decertification. See Roussell, 2008 WL 2714079, *24 ("This Court has recognized that the remedial nature of the FLSA and the purposes of Section 216 militate strongly in favor of allowing cases to proceed collectively."); Roussell v. Brinker Int'l, Inc., CIV.A. H-05-3733, 2008 WL 7835721, at *3 (S.D. Tex. Sept. 30, 2008)(decertifying the collective action). "[W]hen there are significant differences in employment experiences, …, the procedural advantages of a collective action evaporate[.]" Johnson v. Big Lots Stores, Inc., 561 F. Supp. 2d 567, 588 (E.D. La. 2008). "The purpose of a collective action is to try several claims, rather than multiple individual trials. However, for a collective action to be efficient, there must be "the same factual and legal issues." Johnson, 561 F. Supp. 2d at 587 (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 173 (1989); Prickett v. DeKalb County, 349 F.3d 1294, 1297 (11th Cir.2003); Braunstein v. Eastern Photographic Labs., 600 F.2d 335, 335 (2d Cir.1979)).

Based upon the evidence presented, the Court does not believe that the same factual or legal issues would be at play. The evidence indicates that Plaintiffs' claims are individualized and dependent upon factors (such as the manager on duty, the Hotshots location, the amounts earned, etc.) that preclude collective treatment. See Roussell, 2008 WL 2714079, *22 (holding that individual issues precluded collective action where "adjudication of a claim that particular managers coerced servers to share tips … requires an individualized analysis of the particular manager's actions, and that these actions vary significantly from manager to manager, restaurant

to restaurant, and over time.").   The Court notes that the advantages to collective treatment (lower costs, conservation of judicial resources) outlined by Plaintiffs are present in every class or collective action.  The Court finds that an attempt to collectively try this action would be not only inefficient, but also violate Defendants' procedural and constitutional rights.  Defendants "cannot be expected to come up with 'representative' proof when the plaintiffs cannot reasonably be said to be representative of each other." Johnson, 561 F. Supp. 2d at 587.  As one court noted:

> It is obvious from the discovery presented that this 'policy' and its effects are neither homogeneous nor lend themselves to collective inquiry. The effects of the policy as alleged are anecdotal, that is to say particularized. Plaintiffs' own witnesses demonstrate that the 'policy' was not even uniformly or systematically implemented at any given store. While it is true that this 'lesser' standard should not preclude certification, and 'similarly situated' does not mean identically situated, plaintiffs have failed in their burden of proof to demonstrate identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency.

Basco, 2004 WL 1497709, at *7 (E.D. La. July 2, 2004).  Based upon the foregoing, the Court finds that it would be unfair to Defendants' procedural rights to have this case proceed as a collective action when there is no overarching purported unlawful policy and when the Named Plaintiffs cannot provide representative testimony.

Further, the Court finds that there are more than minor factual discrepancies.  Rather, the issue is whether the Named Plaintiffs can provide representative testimony.  Based upon the record before the Court, it appears that they cannot because they are unable to address the tip-sharing policies that affected their colleagues, particularly at other stores.  Plaintiffs have not addressed the realities of how they would present their case at trial in light of the Named

Plaintiffs' testimony.[4]  Further, given that there does not appear to be a single uniform policy, it is unclear how such evidence could proceed in a fair and representative proceeding.

### C.  Conclusion

For all of the foregoing reasons, the Court decertifies the FLSA collective action and the opt-in class.  The Named Plaintiffs' claims remain pending.

## II.  MOTION TO CERTIFY MISSOURI AND ILLINOIS STATE LAW CLAIMS AS A CLASS ACTION

In their motion, Named Plaintiffs move to certify the Missouri and Illinois state law claims in this case as a class action under Rule 23.  Plaintiffs contend that Hotshots servers and bartenders at the non-franchised Hotshots locations in Missouri and one non-franchised Hotshots location in Illinois were forced to participate in unlawful tip sharing.  (ECF No. 140 at 3).  Plaintiffs contend that they were required to share their tips with employees who customarily and regularly did not receive tips, such as cooks and door men.  (Id.)  Plaintiffs argue that the "misuse of tips and participation of non-tipped employees invalidate Hotshots' tip pool and nullifies Defendants' entitlement to claim a tip credit against the minimum wage, resulting in minimum wage violations commonly applying to all putative class members."  (Id.)  If the Court were to grant Plaintiffs' motion, the Missouri state law class would be: "All current and former servers and bartenders, employed by Defendants in Missouri at any time between March 14, 2010 and the present," and the Illinois state law class would be: "All current and former servers and bartenders, employed by Defendants in Illinois at any time between March 14, 2010 and the present." (ECF No. 140 at 2).

### A.  Prerequisite Requirements for Class Certification Under Rule 23(a)

---

[4] For example, the Court does not know how a single description of the policy could be crafted for jury instructions.

Rule 23(a) establishes four prerequisite conditions to maintain a class action. Fed.R.Civ.P. 23(a). These conditions commonly are referred to as (1) numerosity, which means the class must be "so numerous that joinder of all members is impracticable," (2) commonality, which requires that "there are questions of law or fact common to the class," (3) typicality, which requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and (4) adequacy, which ensures that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); see also Paxton v. Union Nat'l Bank, 688 F.2d 552, 559 (8th Cir. 1982). "Rule 23 makes explicit that all four factors must be met, and therefore the proper analysis does not include a balancing of those factors." Rikard, 287 F.R.D. at 489.

"In addition to satisfying the prerequisites under Rule 23(a), a party seeking class action certification must meet one of three possible standards set forth in Rule 23(b)." Rikard, 287 F.R.D. at 491. Plaintiffs argue that at least one of the alternative requirements of Rule 23(b), that common issues predominate over any questions affecting only individual members ("predominance") and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ("superiority"), is met. (ECF No. 140 at 9)(citing Fed.R.Civ.P. 23(b)(3).

### B. Numerosity

Plaintiffs maintain that the first factor, numerosity, is present given the size of the putative class. Plaintiffs assert that the putative class consists of 700-800 hundred class members in this case. (ECF No. 140 at 10, n.2). Plaintiffs contend that a class as small as 40 class members, however, is "generally sufficient." (ECF No. 140 at 10)(citing Schoenbaum v. E.I.

Dupont De Nemours & Co., 4:05CV01108ERW, 2009 WL 4782082, at *5 (E.D. Mo. Dec. 8, 2009).

Based solely upon the number of putative class members, the Court finds that the numerosity requirement has been met.[5]

### C. Commonality

"This requirement of 'common questions of law or fact among members of the class' is typically not difficult for class action plaintiffs to meet. Schoenbaum, 2009 WL 4782082, at *5 (citing Mund v. EMCC, Inc., 259 F.R.D. 180, 183–84 (D.Minn.2009)).

Plaintiffs state that the company-wide policy was to utilize the tip credit and pay each server and bartender in the putative class an hourly rate less than full minimum wage, plus tips. (ECF No. 140 at 12). Plaintiffs state that if the tip sharing arrangement is found unlawful and the tip credit is nullified, then each putative class member's damages are equal to the difference between the applicable hourly minimum wage and the hourly rate actually paid to the employee for all hours worked within the relevant period. (Id.).

In response, Defendants assert that the putative class members' claims vary "wildly" and therefore are not common. (ECF No. 161 at 8-20). As discussed previously, Defendants maintain that the state law claims are not common because the putative plaintiffs were not subject to the same policy.

The Court finds that this element has not been met. As discussed more with respect to whether common issues predominate, the Court finds that significant differences regarding the described policy demonstrates that the commonality requirement has not been met.

---

[5] Defendants did not directly address the numerosity requirement. Instead, the Defendants focused their briefing on other requirements that relate to numerosity, particularly the predominance requirement.

### D. Typicality and Adequacy

Typicality refers to the requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Simply put, this requires the court to consider whether 'other members of the class ... have the same or similar grievances as the plaintiff,' and the requirement is 'fairly easily met' where the other class members' claims are similar to the named plaintiffs'." Schoenbaum, 2009 WL 4782082, at *6 (quoting Alpern v. Utilicorp United, Inc., 84 F.3d 1525, 1540 (8th Cir.1996) (internal quotations and citations omitted).

"The adequacy requirement—that the representative parties will fairly and adequately protect the interests of the class—is met if (1) the plaintiff's attorney is qualified, experienced, and will competently and vigorously prosecute the suit; and (2) the interest of the class representative is not antagonistic to or in conflict with other members of the class." Schoenbaum, 2009 WL 4782082, at *7 (citation and internal quotations omitted)). "The purpose of the adequacy prong of Rule 23(a) is 'to uncover conflicts of interest between named parties and the class they seek to represent.'" Schoenbaum, 2009 WL 4782082, at *7 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625–26 (1997)).

Plaintiffs contend that the claims of Plaintiffs Thelma White and Nicole Carroll "arise from the same events and course of conduct as experienced by the putative class members and they all share the same legal theories." (ECF No. 140 at 14). Plaintiffs assert that all putative class members were "employed at the named non-franchise Hotshots locations, were subjected to the same mandatory tip sharing policy and practice that involved servers/bartenders sharing tips with cooks and doormen, and were subjected to the same minimum wage violations as a result of the nullification of the tip credit." (Id.). Plaintiffs also explain that there may be several reasons

why putative class members may not join a comparable FLSA collective action and that speculation regarding that issue should not preclude certification of the state law claims. See Jankowski v. Castaldi, 01CV0164(SJF)(KAM), 2006 WL 118973, at *2 (E.D.N.Y. Jan. 13, 2006)(holding that since potential class members may have failed to join the FLSA collection action because they feared reprisal).

As to adequacy, Plaintiffs assert that no conflicts between the representatives and the class. (ECF No. 140 at 15). Further, Plaintiffs state that class counsel are experienced wage and hour and complex action attorneys and have engaged in vigorous and intense litigation in this case already. Finally, Plaintiffs assert that the credibility of the Named Plaintiffs is "completely irrelevant to the adequacy of representation." (ECF No. 177 at 12)(citing Levie v. Sears, Roebuck & Co., 496 F. Supp. 2d 944, 949 (N.D. Ill. 2007)("whether or not a plaintiff is credible is irrelevant to that person's ability to be a class representative")).

In response, Defendants contend that the low opt-in rate to the collective action of class members, who are also members of the putative state law class, demonstrates that the Named Plaintiffs' claims are atypical of the putative class. (ECF No. 161 at 7). Defendants assert that the failure of class members to opt-in shows that they do not "have the same or similar grievances as the named plaintiff." Chorosevic v. MetLife Choices, 4:05-CV-2394 CAS, 2007 WL 2159475 (E.D. Mo. July 26, 2007) aff'd, 600 F.3d 934 (8th Cir. 2010); (ECF No. 161 at 7-8).

Further, Defendants assert that the typicality and adequacy requirements are not met because the Named Plaintiffs are not credible as to their employment, tip sharing, and their knowledge of other class members. (ECF No. 161 at 22-27).

As an initial matter, the Court finds that Plaintiffs' counsel are able to adequately represent the class, given their experience in wage and hour cases and complex litigation. The

Court further finds that the credibility attacks are not so significant that they would jeopardize the interests of the class members. The Court, however, has concern regarding whether the Named Plaintiff's claims are typical of the class and regarding their knowledge of pay practices at other locations. While a class representative does not need to have "independent knowledge of all the facts and legal claims alleged in the suit" McKay v. Tharaldson, 272 F.R.D. 465, 468 (D.N.D. 2011), the class representatives' testimony must be typical and representative of the claims in the suit. Given the differences between the Named Plaintiff's testimony and the testimony of the opt-in plaintiffs regarding the alleged policy, the Court finds that typicality is not present. The Court further finds that the Named Plaintiffs would likely have difficulty as representatives of the putative class. The Named Plaintiffs indicated that they could not speak for any other employee regarding their working conditions, particularly their tipping requirements. ECF No. 146 at 12. Given their inability to provide representative testimony, the Court finds that the typicality and adequacy of representation factors have not been met.

### E.  Rule 23(b) Factors

In addition to satisfying the prerequisites under Rule 23(a), a party seeking class action certification must meet one of three possible standards set forth in Rule 23(b). In this case, Plaintiffs maintain certification is appropriate under 23(b)(3). "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" Amchem, 521 U.S. at 615 (quoting Fed.R.Civ.P. 23(b)(3)); Rikard, 287 F.R.D. at 492. These two additional requirements commonly are referred to as "predominance"

and "superiority." As discussed herein, the Court finds that Plaintiffs fail to satisfy these additional requirements.

## 1. Predominance

The predominance requirement in Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." The requirement of predominance of common questions under Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623 (citation omitted). The Eighth Circuit has stated that "[i]f, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005). The question is a common one only if "the same evidence will suffice for each member to make a prima facie showing." Id. In analyzing this matter, courts may look beyond the pleadings to determine "whether, given the factual setting of the case, if the plaintiffs['] general allegations are true, common evidence could suffice to make out a prima facie case for the class." Id. (citations omitted).

Plaintiffs state that common evidence supporting all class members' claims includes the "corroborating testimony of class members regarding the mandatory nature of the tip sharing arrangement that included cooks and doormen and the testimony of former managers that confirms that the mandatory tip sharing arrangement involving cooks and doormen was HotShots policy." (ECF No. 140 at 17). Plaintiffs broadly claim that there are "no individualized legal issues whatsoever." (ECF No. 140 at 17).

In response, Defendants assert that Plaintiffs have not shown predominance. (ECF No. 161 at 8-19. Defendants argue that Plaintiffs have not shown that they are all subject to the same policy.

The Court finds that Plaintiffs have not shown predominance based upon their "common evidence" of a mandatory tip sharing policy. "Even if Rule 23(a)'s commonality requirement may be satisfied by that shared experience, the predominance criterion is far more demanding." Amchem, 521 U.S. at 623-24. Plaintiffs have not shown that Hotshots servers and bartenders were subject to a homogeneous or systemic policy throughout the Hotshot stores, or that such a policy existed with respect to any individual Hotshots store. Rather, dissimilar rules seem to have applied to employees at the same store, depending on factors such as who was working (in particular which manager), the amount the server/bartender earned, and the amount of assistance received. "Given the greater number of questions peculiar to the several categories of class members, and to individuals within each category, and the significance of those uncommon questions," the supposed policy that tip sharing was mandatory fails to satisfy the Rule 23(b)(3) predominance standard. Amchem, 521 U.S. at 624. The evidence before the Court indicates that there was not a uniform treatment or policy, and the case bears closer resemblance to cases in which plaintiffs assert that particular managers enforced rules or policies in episodic and distinct ways. Because the evidence to prove predominance would vary from member to member of the putative class, the Court finds that predominance has not been met. Blades, 400 F.3d at 566.

### 2. Superiority

"In order to garner certification under Rule 23(b)(3), Plaintiffs also must meet the requirement of superiority, which determines whether the class action exception is the best option for the allegedly harmed group." Rikard, 287 F.R.D. at 492-93 (citing Nerland v. Caribou

Coffee Co., Inc., 564 F.Supp.2d 1010, 1035 (D.Minn.2007) ("Rule 23(b) ... requires that class actions be a superior means to adjudicate plaintiffs' claims.")).  Rule 23(b) offers a non-exclusive list of factors to consider when making a superiority determination, including: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed.R.Civ.P. 23(b)(3).

First, Plaintiffs assert that there is "no evidence that a class member would prefer to control the prosecution of this case themselves [sic]." (ECF No. 140 at 18).  Plaintiffs also note that "scores of employees" have opted-in to the FLSA collective action currently pending before this Court, rather than filing their own suits.  However, upon critique from defense counsel regarding the small percentage of class members that joined the collective action, Plaintiffs asserted that the number of putative plaintiffs that chose to opt-in to the FLSA action is irrelevant to state law class certification.  (ECF No. 177 at 4-5).  Plaintiffs cite to Guzman v. VLM, Inc., 07-CV-1126 JG RER, 2008 WL 597186 (E.D.N.Y. Mar. 2, 2008), where the district court decided to retain supplemental jurisdiction over the state wage and hour claims, even though there was a concern that the opt-in rate of the FLSA claim would be low.  The Guzman court noted that:

> The factual overlap between the federal claims and the state claims is virtually total; it would ill serve the interests of convenience or judicial economy to relitigate in state court the defendants' pay practices. To the extent that employees may feel intimidated about volunteering to participate in an action as suggested by the plaintiffs, fairness counsels in favor of exercising supplemental jurisdiction to hear their claims.

<u>Id.</u>, at *9; <u>Noble v. 93 Univ. Place Corp.</u>, 224 F.R.D. 330, 346 (S.D.N.Y. 2004)("there is reason to believe that class members may fear reprisal and lack familiarity with the legal system, discouraging them from pursuing individual claims.").  Based upon that reasoning, Plaintiffs contend that the Court should grant Rule 23 class certification without regard to the FLSA opt-in rate.  (ECF No. 177 at 4).

With respect to Rule 23(b)(3)'s second consideration, Plaintiffs contend that they are "not aware of any other litigation seeking unpaid overtime wages which has been asserted by a member of the putative class."  (ECF No. 140 at 18).[6]

For the third consideration, regarding desirability of concentrating the litigation in this forum, Plaintiffs assert that the class action promotes efficiency and judicial economy because it would be more costly and time consuming for each individual class member to litigate his or her claims.  (ECF No. 140 at 18).

Finally, Plaintiffs state that there is "nothing unique" about this action that makes it less susceptible to class treatment than other wage and hour cases.  (ECF No. 140 at 19).  Plaintiffs maintain that the case is manageable because the class is "discrete, can be identified from the defendants' records and corroborating testimony, and where adjudicating identical claims and legal theories will avoid numerous individual trials of the name nature."  (<u>Id.</u>)

In response, Defendants argue that the low opt-in rate of the FLSA action does not support the superiority argument.  (ECF No. 161 at 3-7).  In support of their position, Defendants cite to <u>Garcia v. Freedom Mortgage Corp.</u>, 274 F.R.D. 513 (D.N.J. 2011)[7] and note that its procedural posture was similar to the one at hand: opt-in conditional class certification was completed before the Rule 23 class certification of the state law wage and hour class was sought.  There,

---

[6] This case, however, is not a case for overtime wages.

[7] Plaintiffs point out that this district court case is not binding on this Court.  (ECF No. 117 at 2).

"less than 44%" of one putative subclass and "less than 17%" of the other putative subclass had opted-in to the FLSA litigation. The <u>Garcia</u> court held that "[b]ecause of the legal similarities between claims under the FLSA and [the New Jersey wage and hour law] and the fact that both claims arise from the same set of operative facts, the Court must conclude that a party that seeks individual control over his or her FLSA litigation would also have an interest in the individual control of his or her [state wage and hour] claim." <u>Garcia</u>, 274 F.R.D. at 517. The <u>Garcia</u> court discerned that "a party that seeks individual control over his or her FLSA litigation would also have an interest in the individual control of his or her [state wage and hour] claim. It would therefore be unfair to certify a [state wage and hour] class and drag the putative class members into this Court when they have already demonstrated an interest to not be involved in this litigation." <u>Id.</u> Therefore, the district court denied the plaintiffs' motion for class certification of a state law wage and hour class under Rule 23.

Here, Plaintiffs sent out nearly 800 Court-approved notices of the collective action. (ECF No. 161 at 6; ECF No. 90 at 2). However, less than 10% of the envelopes sent resulted in putative class members consenting to join the FLSA action. (ECF No. 161 at 7). In their affidavits, some employees have stated that they did not opt-in to the collective action because they voluntarily pooled and shared their tips. (<u>Id.</u>)(citing affidavits). Given these affidavits and the low opt-in rate of the collective FLSA action, the Court discerns that at least some members of the putative class do not support the class resolution of the state wage and hour claims and would prefer individual claims or not to pursue claims. Given the current state of the FLSA action, which is coextensive with the state law claims, the Court finds that certifying a state law class action is not appropriate. Evidence before the Court indicates that class adjudication is not superior to pursuing their individual claims, if any.

### III.    MOTIONS FOR SUMMARY JUDGMENT

#### A.  Standard

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011).  The substantive law determines which facts are critical and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Only disputes over facts that might affect the outcome will properly preclude summary judgment.  Id.  Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  The nonmoving party may not rest upon mere allegations or denials of his pleading.  Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331.  The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

### B. Plaintiffs' Motion for Summary Judgment on Liability [157]

The employer is required to satisfy the following two statutory prerequisites in order to utilize the "tip credit" allowance: (1) the employer must inform the employee of the provisions in section 203(m); and (2) all tips received by an employee must be retained by the employee, "except that [§ 203(m) ] shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." See 29 U.S.C. § 203(m); Pedigo v. Austin Rumba, Inc., 722 F. Supp. 2d 714, 721 (W.D. Tex. 2010). "If the employer fails to meet either of these requirements, it is not eligible to claim the tip credit, and in such a case, the employer must pay each employee the full minimum wage … that is required under section 206." Pedigo, 722 F. Supp. 2d at 721.

Plaintiffs seek summary judgment from the Court on the issue of liability. Plaintiffs contend that Defendants' written policy was unlawful and Defendants should be liable on that basis alone. In support of their motion, Plaintiffs first point out that Hotshots "affirmatively suggests" that employees share their tips with cooks and doormen. (ECF No. 178 at 39). Second, Plaintiffs state that Hotshots implemented a handbook provision, applicable to all class members and all of the non-franchised locations, that suggests tip sharing and recommends a specific percentage of tips to be shared. (Id.). As stated, the Hotshots employee handbook states, "It is suggested a voluntary 5% gratuity to the cooks and bartenders at the end of your full shift." Third, Plaintiffs note that Hotshots utilized tip-out logs to keep records of the tips shared by employees. (Id.). The tip-out logs reflected the date, the server's initials, and the amount in tips shared with particular employees, such as cooks. (ECF No. 157 at 5). Fourth, Plaintiffs

highlight that Hotshots managers are involved in the tip-sharing in that they hold the tips as a middleman between the server or bartender giving the shared tip and the cook or doorman receiving the tip. (ECF No. 178 at 39). That is, if a particular cook or doorman who is to receive a shared tip has already left the restaurant for the day, a Hotshots manager would hold the tip for that employee until that employee would come back on their next shift. (ECF No. 157 at 6).

Plaintiffs contend that the inclusion of cooks and doormen in the tip pool is a per se violation of the law. (ECF No. 157 at 10). Plaintiffs assert that Hotshots erroneously claimed a tip credit because a tip pool can only be legally valid among those employees who "customarily and regularly" receive tips. (ECF No. 157 at 6)(citing 29 U.S.C. §203(m); 29 C.F.R. §531.59).[8] Plaintiffs point to the Department of Labor Field Operations Handbook which provides that where an employer does not strictly observe the provisions of Section 3(m) of the FLSA, no tip credit may be claimed and the employees are entitled to receive the full cash minimum wage, in addition to any tips they may have received. (ECF No. 157 at 7-8 (citing Department of Labor Field Operations Handbook §30d01(b)). Further, Plaintiffs claim that the doormen are not employees, but independent contractors, who cannot share in tips. (ECF No. 157 at 10). Plaintiffs claim that Defendants cannot satisfy their burden to demonstrate that the tip pool was lawful and, therefore, summary judgment should be entered in Plaintiffs' favor on the issue of liability. (Id.).

---

[8] 29 U.S.C. §203(m) provides, in relevant part, that "this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." Likewise, 29 C.F.R. § 531.59 provides, in part, that "the tip credit may be taken only for hours worked by the employee in an occupation in which the employee qualifies as a 'tipped employee.'"

Further, Plaintiffs assert that Defendants cannot meet their burden to prove that servers'
decisions to include cooks and doormen in the tip pool was "voluntary." (ECF No. 157 at 11-
13). See, e.g., Lewis v. Adams Sys., LLC, CIV.A.H-08-2009, 2008 WL 4858356, at *3 (S.D.
Tex. Nov. 10, 2008)("The employer bears the burden of proving the validity of an employee tip
pool[.]") Plaintiffs assert that employees may share tips with other workers who are not
customarily and regularly tipped "only if they do so 'free from any coercion whatever and
outside any formalized arrangement or as a condition of employment.'" (ECF No. 157, p. 12
(citing Roussell, 2008 WL 2714079, at *18)). Plaintiffs argue that it is sufficient to prove
liability that Hotshots "suggests tip sharing." (ECF No. 178 at 6-7). Plaintiffs contend that
Hotshots enforced the tip-sharing requirement through its employee handbook, "affirmative[]
suggest[ions]," and manager control of tips and use of tip-out logs. (ECF No. 157 at 13).
Plaintiffs assert that Defendants made participation in the tip pool a job requirement for
employees at Hotshots and that failure to participate was at the employees' "own peril." (ECF
No. 157 at 13).

In response, Defendants contend that the policy, as stated, is lawful. Further, Defendants
state that whether or not the policy was voluntary is a question of fact for trial, not summary
judgment. (ECF No. 166 at 7-8). Defendants note that Plaintiffs have not identified any
discipline or punishment imposed if servers or bartenders did not share their tips, as further
evidence that tip sharing was voluntary. (ECF No. 166 at 10). Defendants also provide several
affidavits and deposition testimony of former and current servers, bartenders, and managers that
state that tip sharing was voluntary and not required. (ECF No. 166 at 6-7, 10-13).

As an initial matter, the Court must determine the burden of proof regarding whether the
tip sharing arrangement was valid. With regard to statutory exceptions, the United States

Supreme Court has explained that "the general rule of statutory construction that the burden of proving the justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits ..." FTC v. Morton Salt Co., 334 U.S. 37, 44–45, 68 S.Ct. 822, 92 L.Ed. 1196 (1948); Meacham v. Knolls Atomic Power Lab., 554 U.S. 84, 91 (2008)("When a proviso ... carves an exception out of the body of a statute ... those who set up such exception must prove it (citations omitted). That longstanding convention is part of the backdrop against which the Congress writes laws, and we respect it unless we have compelling reasons to think that Congress meant to put the burden of persuasion on the other side."). The United States Supreme Court has held that "the application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof." Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974); see Fast v. Applebee's Int'l, Inc., 638 F.3d 872, 882 (8th Cir. 2011)("exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof to establish that an exemption applies"); Lewis, 2008 WL 4858356, at *3 ("The employer bears the burden of proving the validity of an employee tip pool[.]"); Roussell, 2008 WL 2714079, at *5 ("The employer bears the burden of proving the validity of a tip pool, and the relevant FLSA provisions are strictly construed in favor of the employee.").

Plaintiffs contend that "[b]ecause the tip credit rules of the FLSA are an exception to the FLSA's general requirement to pay employees the full minimum wage, it is Defendants' burden to prove the validity/lawfulness of their tip pool and that they are entitled to take the FLSA tip credit." (ECF No. 178 at 34). In turn, Defendants maintain that Plaintiffs, as the moving party, "'must affirmatively show the absence of evidence in the record.'" (ECF No. 166 at 3 (citing

Miller v. Cottrell, Inc., 06-0141-CV-W-NKL, 2007 WL 3376731, at *6 (W.D. Mo. Nov. 8, 2007); Celotex Corp., 477 U.S. at 324).[9]

The Court agrees that Defendants have the burden at trial to prove any affirmative defense. However, "'where the *nonmoving* party will bear the burden of proof at trial on a dispositive issue ... Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" Hoover v. Nebraska ex rel Nebraska Dep't of Admin. Servs., 4:12CV3197, 2013 WL 5308294, at *6 (D. Neb. Sept. 19, 2013)(quoting Celotex Corp., 477 U.S. at 324). As discussed herein, the Court finds that Defendants have come forward with affidavits and testimony in support of their affirmative defense (voluntariness), which satisfies Rule 56(c). In turn, Plaintiffs have not shown the absence of any evidence to support the voluntariness defense. Therefore, the Court finds Plaintiffs have not met their burden and that an issue of fact exists that must be resolved by the jury.[10]

---

[9] The Seventh Circuit observed that another FLSA definition, 29 U.S.C. § 203(*o* ) (excluding washing and clothes-changing time from coverage under the statute), creates an "exclusion," not an "exemption," under the Act because "exemptions" appear in Section 213, not Section 203. Sandifer v. U.S. Steel Corp., 678 F.3d 590, 595 (7th Cir.2012); Driver, 890 F. Supp. 2d at 1027.

[10] The Court further notes that the cases cited by Plaintiffs in support of their burden of proof argument largely do not support grant of summary judgment in their favor. See Roussell, 2008 WL 2714079, at *11 (denying defendants' motion for summary judgment); Barcellona v. Tiffany English Pub, Inc., 597 F.2d 464, 469 (5th Cir. 1979)(affirming in part and reversing in part judgment from trial); Fast, 638 F.3d at 875 (affirming denial of defendant's motion for summary judgment on interlocutory appeal); Fast v. Applebee's Int'l, Inc., 06-4146-CV-C-NKL, 2010 WL 816639 (W.D. Mo. Mar. 4, 2010) aff'd, 638 F.3d 872 (8th Cir. 2011)(denying Applebee's motion for summary judgment); Pedigo v. Austin Rumba, Inc., 722 F. Supp. 2d 714, 733-35 (W.D. Tex. 2010)(granting plaintiffs' motion for summary judgment where defendant presented "no evidence" to support its defense).

The Court finds that there remains an issue of fact regarding whether Hotshots employees were required to participate in the tip-sharing pool. First, the mere fact that cooks are not customarily tipped does not make the tip pool per se invalid. As noted by the Sixth Circuit, the U.S. Dept. of Labor Field Operations Handbook § 30d04(a) provides, "It is not required that all employees who share in tips must themselves receive tips from customers." See http://www.dol.gov/whd/FOH/FOH_Ch30.pdf. "This approach is consistent with the statutory language, which does not require that an employee directly receive the requisite amount of tips from customers." Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294, 301 (6th Cir. 1998).

Likewise, if the tip pool is deemed voluntary, that also provides a defense to summary judgment. See 29 C.F.R. § 531.54 ("[W]here an accounting is made to an employer for his information only or in furtherance of a pooling arrangement whereby the employer redistributes the tips to the employees upon some basis to which they have mutually agreed among themselves, the amounts received and retained by each individual as his own are counted as his tips for purposes of the Act."); cf. Kilgore, 160 F.3d 301 (under 29 C.F.R. § 531.54, "valid **mandatory** tip pools ... can only include those employees who customarily and regularly receive tips")(emphasis added); Turner v. Millennium Park Joint Venture, LLC, 767 F. Supp. 2d 951, 954 (N.D. Ill. 2011)("That regulation [29 C.F.R. § 531.54] would not countenance a situation where … an employer forces its employees receiving tips directly from customers to contribute to a tip pool."); Opinion Letter Fair Labor Standards Act (FLSA), 1997 WL 998047 (Cir. Ct.

Nov. 4, 1997)("an employer will lose the benefit of the exception from the tip-retention requirement if tipped employees are **required** to share their tips with employees who do not customarily and regularly receive tips, such as janitors, dishwashers, chefs, or laundry room attendants")(emphasis added); Driver v. Apple Illinois, LLC, 890 F. Supp. 2d 1008, 1036, n.18 (N.D. Ill. 2012)(emphasis in original)("Moreover, the tip pool regulation is further complicated by the fact that it allows voluntary tip pools to include employees who do *not* customarily and regularly receive tips from customers[.]"); see, e.g., Defendants' Statement of Additional Material Facts, ECF No. 167, ¶9 (Plaintiff Baum testified that there was, at times, an "agreement" between a server or bartender, on one hand, and a cook or a doorman, on the other hand, not to give any tip to the cook or doorman).

The Court believes that whether tip-pooling was voluntary is an issue of fact for a jury to determine. The evidence before the Court provided by Plaintiffs indicates that the purported coercion varied from manager to manager and store to store. In turn, Defendants provide evidence that servers had different experiences, including no coercion. Although it is not dispositive, the Court also believes that the lack of any discipline for failure to participate in any tips-sharing arrangement provides some support that such participation was voluntary. Based upon the foregoing, the Court finds that an issue of fact exists regarding liability and denies Plaintiffs' motion for summary judgment on liability on this basis.

> **C. Defendant Daniel Volmert's Motion for Summary Judgment [147], Defendant Julie Volmert's Motion for Summary Judgment [150], Plaintiff's Motion for Summary Judgment on Individual Liability of Daniel and Julia Volmert [156][11]**

---

[11]As evidenced by the different titles of the motions, Ms. Volmert goes by both "Julie" and "Julia."

The crux of these motions for summary judgment is whether Julie and Daniel Volmert are "employers" for purposes of the FLSA, MMWL, and IMWL. At issue is whether Julie and Daniel Volmert exercised sufficient control to be deemed "employers" and potentially liable under the statutes. They claim that they were owners but had little to no involvement in the day-to-day operation of the Hotshots stores. "Under the FLSA, the determination of whether a party is an employer is a question of law for the court." Solis v. Hill Country Farms, Inc., 808 F. Supp. 2d 1105, 1113 (S.D. Iowa 2011) aff'd, 469 F. App'x 498 (8th Cir. 2012)(citing Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 965 (6th Cir.1991)).

Under the FLSA, an employer 'includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency.'" 29 U.S.C. § 203(d); Wirtz v. Pure Ice Co., 322 F.2d 259, 262 (8th Cir. 1963)("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee."). "The Supreme Court has indicated that courts should apply an 'economic realities' test to determine whether an employment relationship exists." Baker v. Stone Cnty., Mo., 41 F. Supp. 2d 965, 979 (W.D. Mo. 1999). Applying the "economic realities test," "[t]o determine whether an individual or entity is an employer, the court considers whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Gray v. Powers, 673 F.3d 352, 355 (5th Cir. 2012)(citing Williams v. Henagan, 595 F.3d 610, 620 (5th Cir. 2010)).

The principal case under Eighth Circuit law is Wirtz v. Pure Ice Co., 322 F.2d 259, 262 (8th Cir. 1963); Hembree v. Mid-Continent Transp., Inc., 08-6094-CV-SJ-HFS, 2011 WL 5841313, at *1 (W.D. Mo. Nov. 21, 2011)(noting Wirtz is controlling law). In Wirtz, the Eighth Circuit

held that the individual stockholder, Vance Thomspon, was not an employer under the FLSA. The Court noted that Mr. Thompson was "the corporate defendant's controlling stockholder and dominating figure." Nevertheless, the Court determined that Mr. Thompson was not an "employer" under the Act. The Court recognized that Mr. Thompson "could have taken over and supervised the relationship between the corporation and its employees had he decided to do so. A careful reading of the record, however, indicates that he did not do so." <u>Wirtz</u>, 322 F.2d at 262. Mr. Thompson did not live in the same city as the corporate defendant. <u>Id.</u> He had stock ownership of several companies. <u>Id.</u> Further,

> He left the matter of compliance with the Fair Labor Standards Act up to the various managers of the businesses in which he had an interest. He visited the Pure Ice plant two or three times a year but had nothing to do with the hiring of the employees or fixing their wages or hours. When Wanda Lee became manager- a fact of which Thompson was unaware for some time after it occurred- the only change in the situation was that he was consulted with reference to mechanical difficulties of plant operation. Thompson was an investor in this and other corporations and enterprises.

<u>Id.</u> at 262-63. <u>Wirtz</u> and its progeny "require 'operational control of significant aspects of ... day-to-day functions, including compensation of employees or other matters in relation to an employee.'" <u>Hembree</u>, 2011 WL 5841313, at *1 (citing <u>Alvarez Perez v. San–Orlando Kennel Club, Inc.</u>, 515 F.3d 1150 (11th Cir. 2008)). In other words, "unexercised authority is insufficient to establish liability as an employer." <u>Alvarez Perez</u>, 515 F.3d at 1161. However, "'[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" <u>Rikard</u>, 2013 WL 5298460, at *3 (quoting <u>Solis</u>, 808 F.Supp.2d at 1115).

With these standards in mind, the Court turns to a consideration of employer liability as to Julia and Daniel Volmert.

### 1. Julia Volmert

Ms. Volmert claims that she cannot be considered an employer under the economic realities test. Ms. Volmert asserts that she is not involved in the day-to-day operations of the Hotshots restaurants or the day-to-day working lives of the Hotshots servers and bartenders that make up Plaintiffs and the proposed class. (ECF No. 152 at 7). Rather, Ms. Volmert states that her primary job duties are "insurance and legal." (Id.) Ms. Volmert only attends about 10% of the general manager's weekly meetings. (Id.) Ms. Volmert has never fired any Hotshots employee, only general managers have authority to do that. (ECF No. 152 at 8). Plaintiffs testified that they had no knowledge of Ms. Volmert hiring or firing anyone. (Id. at 9). Ms. Volmert testified that she does not set schedules for employees; the managers and assistant managers set schedules for servers and bartenders. (Id. at 9). She claims that the director of operations, Chris Avolio, receives very little supervision from her. (Id.) Ms. Volmert does not discipline employees; the managers and assistant managers do that. (Id.) Ms. Volmert does not determine the Hotshots employees' pay rates; the management staff of each particular location does that. (Id. at 10). Ms. Volmert does not maintain Hotshots' employment records, or payroll summaries; that information is retained at the Hotshots company office and, later, at a storage facility. (Id.) Personnel records are kept at each individual Hotshots location. (Id.)

Plaintiffs, in contrast, maintain that Ms. Volmert was an employer of Hotshots. Plaintiffs note that Ms. Volmert had the power to control, and actually controlled, significant aspects of the company's day-to-day functions. She was in charge of the "insurance, human resources, payroll, and legal matters" of the company. Unlike the absentee owner in Wirtz v. Pure Ice Co., Ms. Volmert worked 40-60 hours per week at her office at the Dorsett location. (ECF No. 159 at 48). She also visited the St. Charles or Bridgeton Hotshots locations once a week. (ECF No. 152 at

- 40 -

7). Ms. Volmert was the person responsible for making sure that the non-franchised Hotshots locations complied with federal and state wage and hour laws. (ECF No. 159 at 49). Ms. Volmert was also the Hotshots manager who decided to change the policy language regarding tip sharing in the Hotshots employee handbook. (ECF No. 159 at 48). Likewise, Ms. Volmert, along with her husband, made the decision regarding how Hotshots paid its doormen. (ECF No. 159 at 49). Finally, Ms. Volmert was involved in hiring and supervising managerial employees of Hotshots, such as Chris Avolio and Steve Chambell. (Id.)

Based upon the totality of the circumstances, the Court finds that Ms. Volmert was an employer of Hotshots during the relevant time period. Solis, 808 F.Supp.2d at 1116. Although the Defendants claim that Ms. Volmert, does not have enough contact with employees, it is clear from the record that, given her presence at the Hotshots locations and her authority over employment policies that she was a part of the day-to-day operation of Hotshots. In fact, it is hard to claim that Ms. Volmert was not involved in the operation of Hotshots when she drafted at least part of the employee handbook and she signed the employees' paychecks. Thus, despite the fact that Ms. Volmert may have delegated some aspects of the day-to-day functions of Hotshots to other employees, she nevertheless was an employer of its employees under the FLSA, MMWL, IMWL. See Saunders v. Ace Mortgage Funding, Inc., CIV. 05-1437DWFSRN, 2007 WL 4165294, at *5 (D. Minn. Nov. 16, 2007)(internal quotation marks and citation omitted) ("Individuals may be employers without the continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control; rather, control may be restricted or exercised occasionally without removing the employment relationship from FLSA protections."); see also Wirtz, 322 F.2d at 263 (holding that a combination of stock ownership, management, direction and the right to hire and fire employees would "well support" a finding of employer

status); <u>Rikard</u>, 2013 WL 5298460, at *5 (finding Ray Vinson to be an employer even though he delegated some aspects of the day-to-day operations of the company).  The Court finds Ms. Volmert to be an employer under the FLSA, MMWL, and IMWL.  The Court grants Plaintiffs' motion for summary judgment as to Ms. Volmert and denies Defendant Julia Volmert's Motion for Summary Judgment.

### 2.  Daniel Volmert

In support of his Motion for Summary Judgment, Mr. Volmert asserts that he did not hire or fire employees.  (ECF No. 149 at 8).  He did not control their work schedules or employment conditions; those decisions were left to the individual managers.  (<u>Id.</u> at 8-10).  He had no input in drafting the employee handbooks.  (<u>Id.</u> at 9).  Chris Avolio and Daniel Volmert, the district manager, received very little supervision.  (<u>Id.</u>)  Mr. Volmert did not tell them how to train newly hired servers or bartenders.  (<u>Id.</u>)  He did not determine the employees' pay rates.  (<u>Id.</u> at 10-11). He did not maintain employment records.  (<u>Id.</u> at 11).  In sum, Mr. Volmert claims that he had no day-to-day involvement in the Hotshots restaurants, and had no involvement in the day-to-day working lives of the servers and bartenders.  (ECF No. 149 at 7).

Plaintiffs, in response, maintain that Daniel, like Julia, was an employer.  Daniel and Julia Volmert were the founders, owners, and controlling managers of Hotshots.  (ECF No. 160 at 45).  They signed employee paychecks at Hotshots.  (ECF No. 26).  There is evidence in the record that Mr. Volmert participated in some of the day-to-day operations of Hotshot.  Mr. Volmert directed the work of Mr. Avolio.  (ECF No. 160 at 27).  Mr. Volmert and Mr. Avolio made the decision to promote Steve Campbell to the district manager position.  (<u>Id.</u>)  Mr. Volmert helped make the change related to how the doormen are paid.  (ECF No. 160 at 27-28).

Although this is a closer case, the Court finds that Mr. Volmert was an "employer" for purposes of the FLSA, MMWL, and IMWL. The Court notes that that Mr. Volmert was involved in the operation of Hotshots, particularly given that he signed the employees' paychecks. Thus, despite the fact that Mr. Volmert may have delegated some aspects of the day-to-day functions of Hotshots to other employees, he nevertheless was an employer of its employees under the FLSA, MMWL, IMWL. See Saunders, 2007 WL 4165294, at *5; Wirtz, 322 F.2d at 263; Rikard, 2013 WL 5298460, at *5. The Court grants Plaintiffs' motion for summary judgment as to Mr. Volmert and denies Defendant Daniel Volmert's Motion for Summary Judgment.

## IV.   **DAUBERT** MOTION

Defendants filed a motion to strike and exclude the expert testimony of Plaintiffs' damages expert, Mr. Zetlmeisl. (ECF No. 153). Because the expert testimony relates to the calculation of damages for the state law class and the Court has determined that certification of the state law class action is not appropriate, Mr. Zetlmeisl's testimony is not relevant and the Court denies this motion as moot.

## V.   MOTION TO STRIKE

Plaintiffs filed a Combined Motion to Strike Affidavits and Memorandum in Support Thereof (ECF No. 169). Plaintiffs claim that, on the day discovery closed, Defendants engaged in a "name dump" via supplemental discovery responses of numerous people that had knowledge of facts relevant to Defendants' defenses. Two months later, Defendants attached over twenty affidavits from these potential witnesses to support their Motion for Decertification. Plaintiffs claim that this violated the Federal Rules requiring prompt and timely disclosure of witnesses.

Plaintiffs assert that Defendants were "likely known to Defendants throughout this litigation." Plaintiffs ask the Court to strike these affidavits as punishment for violating the Federal Rules.

In response, Defendants assert that they did not surprise Plaintiffs with these witnesses. (ECF No. 189). Defendants state that they told Plaintiffs in their initial disclosures, discovery responses and depositions that all Hotshots employees were informed that the tip sharing policy was voluntary, and Plaintiffs were given the names and contact information for every Hotshots employee from the class period. Defendants emphasize that Plaintiffs contacted these employees, sometimes more than once.

It appears uncontroverted that Plaintiffs knew of all of the employees at issue during the discovery period and that Plaintiffs had the ability to contact these employees during that period. Plaintiffs, however, simply did not know which employees were going to provide affidavits in support of Defendants' dispositive motions and class motions. "Rule 26(a)(1) requires only that plaintiffs identify individuals who may have information about a case; nothing in the rule requires plaintiffs to identify specific individuals from whom they receive declarations and conduct interviews." Espenscheid v. DirectSat USA, LLC, 09-CV-625-BBC, 2010 WL 4553557, at *1 (W.D. Wis. Nov. 3, 2010). Further, it appears that several of these people were specifically identified to Plaintiffs as persons with information as part of Defendants' Rule 26 disclosures (ECF Nos. 189 at 2-3; 189-1), and all of the affiants' contact information was provided over a year ago. (ECF No. 189 at 4). In any event, Plaintiffs were not surprised by Defendants' affirmative defenses to liability and the general information in the affidavits. Plaintiffs have not alleged any prejudice, including that they would have taken any of the affiants' depositions. Therefore, the Court denies Plaintiffs' Motion to Strike.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Certify Missouri and Illinois State Law Claims as a Class Action [138], Defendant Daniel Volmert's Motion for Partial Summary Judgment [147], Defendant Julie Volmert's Motion for Partial Summary Judgment [150], Plaintiffs' Motion for Summary Judgment on Liability and Memorandum in Support [157], and Defendants' Combined Motion to Strike Affidavits and Memorandum in Support Thereof [169] are **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Decertify Collective Class [145] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike and Exclude Expert Testimony [153] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment on Individual Liability of Daniel and Julie Volmert and Memorandum in Support [156] is **GRANTED**.

For the foregoing reasons, the Court **DECERTIFIES** this matter as a collective action. It **DISMISSES WITHOUT PREJUDICE** the claims of all opt-in plaintiffs, leaving before the Court the named plaintiffs who originated this action. Plaintiffs' counsel shall notify the opt-in plaintiffs that the collective action has been decertified and their FLSA claims are no longer pending before this Court.

Dated this 30th day of May, 2014.

_____

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**